**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimbra Cumby,<br><br>        Plaintiff,<br><br>vs.<br><br>Scottsdale Unified School District; John Baracy,<br><br>        Defendants. | No. CV-05-3543-PHX-FJM<br><br>**ORDER** |

      This court has before it defendants' Motion for Partial Dismissal (doc. 9), plaintiff's Response (doc. 11), and defendants' Reply (doc. 15). Based on the following, we grant in part and deny in part defendants' Motion for Partial Dismissal (doc. 9).

**I. Background**

      Plaintiff was hired as the Executive Director of Human Resources for defendant Scottsdale Unified School District ("District") in July 2000, and served under Dr. Barbara Erwin for four years. In July 2004, defendant John Baracy became the Superintendent after Dr. Erwin resigned. During the 2002-2003 school year, a highly-publicized controversy arose regarding alleged misconduct by Maureen Booth, a school principal in the District. Plaintiff was extensively involved in the investigation of the allegations against Booth, and in the termination proceedings that followed. The District's five-member governing board

1  ("Board") eventually sought the discharge of Ms. Booth. However, at least one Board
2  member, Christine Schild, strongly opposed the termination, and publicly criticized the
3  District's expenditure of legal fees in the Booth matter, and complained that the District and
4  the Board were not kept informed as legal expenses accrued. Amended Complaint ¶¶ 7, 12
5  (doc. 6). After Booth resigned in lieu of termination, supporters of Booth, including Ms.
6  Schild, "fueled the controversy by focusing on the legal bills incurred by the District in the
7  Booth dispute as a means of disparaging Dr. Erwin and the law firm she had selected to
8  represent the District." Id. ¶ 12.

9  Plaintiff claims that after Dr. Erwin resigned it became her responsibility and that of
10 the District CFO, Robert Flach, to "disclose that they were knowledgeable of the fees and the
11 reasons why the amount of the fees was not unreasonable." Id. ¶ 16. Plaintiff alleges that
12 her report to the Board was "the primary way in which the Board and the public could learn
13 the facts and end the disparagement and misinformation that Schild and others were creating
14 about the attorneys' fees." Id. "After the audit of the fees was done by the District, and
15 Plaintiff presented her factual information, the fee issue was resolved" in favor of the law
16 firm. Id. ¶ 18.

17 In January 2005, a new Board majority was in place, and Christine Schild was elected
18 the new Board President. Baracy informed plaintiff that Ms. Schild was determined to get
19 rid of plaintiff. Id. ¶ 19. He assured plaintiff that "the situation had absolutely nothing to do
20 with her performance," id. ¶ 20, but that she was "viewed as loyal to [Dr. Erwin]." Id. ¶¶ 19,
21 20. Baracy explained that he "couldn't get three votes [from Board members] to renew
22 [plaintiff's contract]." Id. ¶ 21.

23 Baracy also allegedly told plaintiff that in the future "all administrator contract
24 renewals would have to be approved by the Board and that many of the administrative
25 positions would be reorganized, requiring the positions to be posted and current employees
26 to re-apply and obtain Board approval." Id. ¶ 22. Based on the information from Baracy,
27 plaintiff concluded that it would be unwise for her to subject herself to a public ordeal, and
28 therefore, on February 25, 2005, she chose to resign, effective June 30, 2005. Id. ¶ 23. Four

1  months later, when none of the policy changes predicted by Baracy occurred, plaintiff sought
2  to rescind her resignation. Baracy rejected plaintiff's offer. Id. ¶ 24.

3  Plaintiff then filed this action claiming that Dr. Baracy constructively discharged her
4  in unlawful retaliation for her exercise of free speech under the United States and Arizona
5  constitutions when she provided information regarding legal fees to the Board. She also
6  claims her Fourteenth Amendment rights to due process were violated because her
7  constructive discharge unlawfully deprived her of property rights in her employment, as well
8  as her right to procedural due process. Plaintiff's allegations of fraud, negligent
9  misrepresentation, and sex discrimination are not the subject of the present motion to dismiss.

## II. Free Speech Violation

11  The First Amendment protects government employees from termination because of
12  their speech on matters of "legitimate public concern." Pickering v. Bd. of Education, 391
13  U.S. 563, 571, 88 S. Ct. 1731, 1736 (1968). Matters of public concern are those that can "be
14  fairly considered as relating to any matter of political, social, or other concern to the
15  community." Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983). Whether
16  a public employee's speech addresses a matter of public concern is a question of law. Id. at
17  148 n.7, 103 S. Ct. at 1690 n.7. When making this determination the court looks to the
18  "content, form, and context" of the speech. Id. at 147-48, 103 S. Ct. at 1690.

19  Plaintiff argues that her presentation to the Board regarding attorneys' fees, including
20  information that District management knew about the fees, addressed matters of public
21  concern, and therefore was constitutionally-protected free speech. She claims that she was
22  constructively discharged for speaking publicly about the expenditure of attorneys' fees by
23  the District, in violation of both 42 U.S.C. § 1983 and A.R.S. § 23-1501(3)(d).

24  Defendants contend, on the other hand, that plaintiff's speech is not protected because
25  it was made in the normal course of her job duties. They argue that plaintiff was speaking
26  neither as a citizen on a matter of general concern, nor for the purpose of evaluating the
27  performance of the District. Instead, defendants describe plaintiff's speech as merely
28  providing factual information requested as part of her job responsibilities.

Public employees, by virtue of their public employment and access to information, are in a unique position to make valuable contributions to public debate. Pickering, 391 U.S. at 572, 88 S. Ct. at 1736. However, "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark–and certainly every criticism directed at a public official–would plant the seed of a constitutional case." Connick, 461 U.S. at 149, 103 S. Ct. at 1691. Therefore, absent extraordinary circumstances, constitutional protection is unavailable "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Id. at 147, 103 S. Ct. at 1690.

A public employee's speech is not deprived of constitutional protection simply because the views are expressed in the course of the employee's normal job duties. See, e.g., Ceballos v. Garcetti, 361 F.3d 1168, 1174-75 (9th Cir. 2004), cert. granted, 543 U.S. 1186, 125 S. Ct. 1395 (2005); Taylor v. Keith, 338 F.3d 639, 644-45 (6th Cir. 2003). Instead, the critical inquiry is the "point of the speech in question." Ceballos, 361 F.3d at 1174 (quoting Roth v. Veteran's Admin., 856 F.2d 1401, 1406 (9th Cir. 1988). "[W]as it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" Id. In essence, we must determine whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee. See Connick, 461 U.S. at 147, 103 S. Ct. at 1690); see also Morris v. Crow, 142 F.3d 1379, 1382 (11th Cir. 1998) ("[n]ot only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern"); Koch v. City of Hutchinson, 847 F.2d 1436, 1448 (10th Cir. 1988) (finding relevant that employee was not "motivated or inspired by . . . alleged improprieties or by the desire to expose those improprieties").

This is clearly not a case where the employee's purpose was to assert "employee grievances." Connick, 461 U.S. at 147, 103 S. Ct. at 1690. Nor is this the kind of speech at the other end of the spectrum, where an employee is speaking out about "corruption,

- 4 -

wrongdoing, misconduct, wastefulness, or inefficiency by other government employees." Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 926 (9th Cir. 2004). Plaintiff does not allege that she was "bring[ing] to light actual or potential wrongdoing or breach of public trust." Connick, 461 U.S. at 148, 103 S. Ct. at 1691. Yet she was speaking in response to such a charge.

Plaintiff contends that she submitted the legal fees report to the Board, because "it was up to . . . [her] to disclose that [she was] knowledgeable of the fees and the reasons why the amount of the fees was not unreasonable." Amended Complaint ¶ 16. Although this explanation does not create a "public concern" context for the speech, she further alleges that her report "was the primary way in which the Board and the public could learn the facts and end the disparagement and misinformation that Schild and others were creating about the attorneys' fees." Id. In the context of a high profile political dispute among public officials, we are of the view that uncertainty about where on a spectrum of protection a claim lies should be resolved in favor of the protection of speech. This is especially so in the posture of a Rule 12(b)(6) motion to dismiss. Accordingly, we deny defendants' motion to dismiss Counts I and III of the Complaint.

### III. Due Process Violation

Defendants also move to dismiss plaintiff's claim under 42 U.S.C. § 1983, in which she asserts that she was denied her due process rights under the Fourteenth Amendment when defendant Baracy's misrepresentations resulted in her constructive discharge. She contends that Baracy misrepresented to her that "all administrator contract renewals would have to be approved by the Board and that many of the administrative positions would be reorganized, requiring the positions to be posted and current employees to re-apply and obtain Board approval." Amended Complaint ¶ 39. Plaintiff claims that based on Baracy's statements, she was "tricked into submitting her resignation" id. ¶ 40, and was thereby deprived of her property interest in her employment agreement.

Plaintiff's employment agreement provided:

> On or before May 15, the Governing Board shall offer a contract for the next school year to each administrator who is in the last year of her administrative contract unless, on or before April 15, the Governing Board, a member of the Board acting on behalf of the Board or the Superintendent of the District gives notice to the administrator of the Board's intention not to offer a new administrative contract.

Complaint ¶ 37. If notice of nonrenewal is given, the employee has the right under the employment agreement to appeal. Id. Plaintiff claims that these contractual provisions created a constitutional property right in her continued employment and the right to due process before the District could terminate that property right.

A benefit contained in a public employment contract may rise to the level of a constitutionally-protected property interest if the plaintiff has a legitimate claim of entitlement to it. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). A "unilateral expectation" of a right is insufficient. Id. Here, plaintiff cannot show that she had a property interest in continued employment under her employment agreement. The term of the agreement was one year. According to the language of the agreement, the District did not have an obligation to renew the agreement; it simply had to provide notice of nonrenewal. Complaint ¶ 37. The fact that plaintiff's contract had been previously renewed did not create a claim of entitlement to continued employment, where the language of the employment agreement clearly allowed the District to choose not to renew if prior notice of nonrenewal is given.

Furthermore, even if plaintiff had a protected property interest in continued employment, she waived her right to the appeal process contained in her employment agreement by not pursuing it. We assume for purposes of this motion that Baracy misrepresented that plaintiff's contract would not be renewed, that all administrator contracts had to be presented to the Board, and that current employees would have to reapply. Nevertheless, once plaintiff learned of these new procedures and that her contract would not be renewed, plaintiff retained the option to appeal that decision. Baracy's alleged misrepresentations did not affect this contractual right. Plaintiff, however, did not pursue

1  that option, and in failing to do so, she relinquished her right to appeal. Accordingly,
2  plaintiff's due process claim must fail.
3       Based on the foregoing, defendants' Motion to Dismiss Count II of the Complaint is
4  granted.

### IV. Conclusion

6  **THEREFORE, IT IS ORDERED DENYING** defendants' Partial Motion to Dismiss
7  Counts I and III (doc. 9).  **IT IS FURTHER ORDERED GRANTING** defendants' Partial
8  Motion to Dismiss Count II (doc. 9).
9       DATED this 17th day of April, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 7 -